UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
99-CV-1833(JMR/FLN)

Kennedy Building Associates         )
                                    )
                v.                  )          ORDER
                                    )
Viacom, Inc.                        )

This matter was tried to a jury and to the Court from January 31 to February 7, 2002. Plaintiff brought environmental claims pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act; the Minnesota Environmental Response and Liability Act; and the Minnesota Environmental Rights Act ("CERCLA," "MERLA," and "MERA," respectively), as well as common law nuisance, negligence, and strict liability claims. Defendant brought cross-claims pursuant to CERCLA and MERLA. The jury decided the common law claims and served in an advisory capacity on the CERCLA, MERLA, and MERA claims, which invoke the Court's equitable jurisdiction.

I. Findings of Fact

Based on the evidence admitted at trial, the Court makes the following Findings of Fact regarding the CERCLA, MERLA, and MERA claims.

A. The Kennedy Building Site

Plaintiff, Kennedy Building Associates ("KBA"), owns the property located at 2303 Kennedy Street, N.E., Minneapolis, Minnesota. The building on the site was constructed in the 1920s,

FILED
RICHARD D. SLETTEN, CLERK
MAY 31 2002
JUDGEMENT ENTERED MAY 31 2002
DEPUTY CLERK'S INITIALS

with additions made in the 1950s.

Westinghouse Electric Corporation ("Westinghouse") was the predecessor in interest to defendant, Viacom, Inc.  From the 1920s until 1980, Westinghouse operated an electrical transformer repair facility at the site.  In 1980, Westinghouse sold the site to Hillcrest Development Company ("Hillcrest"), which subsequently sold it to Gerald Trooien in 1982.  Mr. Trooien then transferred the site to KBA, a Minnesota partnership in which he is a partner.

In 1997, KBA discovered that the site's soil, groundwater, and building interior were contaminated with polychlorinated biphenyls ("PCBs") and chlorobenzenes.

B.   Westinghouse Transformer Repair Operations at the Site

Among other activities at the site, Westinghouse repaired PCB transformers.  PCBs were originally thought to be ideal transformer insulators because they are oily liquids that do not conduct electricity and are chemically stable and fire resistant.  The PCB transformers Westinghouse repaired at the site frequently contained multi-gallon quantities of Inerteen, Westinghouse's brand of PCB fluid.  By the late 1960s, however, PCBs and chlorobenzenes were recognized as potential carcinogens, hazardous to human and animal life.  This led to their classification as hazardous substances, which rendered sites where they were found subject to cleaning and remediation.

In the early 1970s, Westinghouse itself studied PCB
contamination, though not at the Minneapolis facility.  One study,
conducted by Dr. Thomas Munson, concluded:

> It simply wasn't possible to handle, ah, gallon
> quantities of PCBs, pumping them into transformers,
> draining them out of transformers, without having some
> spillage.  And it was just a given at that time that
> every facility that had been doing [repair operations]
> for any length of time would have spilled considerable
> amounts of PCB[s].

Testimony of Dr. Thomas Munson, February 4, 2002, Vol. 4, p. 107.
Dr. Munson further testified that he communicated this information
to top-level Westinghouse managers during the 1970s.

By 1976, Westinghouse management was also aware that mineral
oil transformers repaired at such facilities were often heavily
contaminated with PCBs, making the likelihood of PCB contamination
at those facilities even greater.  Based on this evidence, the
Court finds Westinghouse knew during the time it owned the site at
issue that there were health risks associated with PCBs, and that
PCB contamination was virtually certain to be found at its long-
term transformer-repair facilities.  Despite this knowledge,
Westinghouse sold the site without conducting any investigation,
decontamination, or cleanup of PCBs, and without disclosing the
nature of its work at the site.

Trial evidence established that Westinghouse's operations at
the site released PCBs into the environment through spillage during
transformer repairs, overflows of an above-ground storage tank

3

located outside the building containing PCB-contaminated waste oil, and burning of PCB-contaminated oil in the building's furnace.

C.   KBA Ownership of the Site

As indicated, KBA partner Gerald Trooien purchased the site from Hillcrest in 1982 and transferred it to KBA. Because PCBs are odorless and colorless, a visual inspection revealed no evidence of PCB contamination. Trial evidence established that U.S. Environmental Protection Agency inspectors had not discovered PCB contamination when they inspected the site six years earlier. From this evidence, the Court finds Mr. Trooien and KBA did not know, and had no reason to know, when KBA purchased the site, that Westinghouse had disposed of hazardous substances at the site.

After the site was transferred to KBA, it rented space in the building to various commercial and light industrial tenants. There was no credible trial evidence showing that either KBA or its tenants brought PCBs onto the site.

KBA did, however, remove from the site an abandoned underground tank that had once been used to store transformer oil. The removal was supervised by the Minneapolis Bureau of Fire Prevention. There was no credible evidence showing the tank contained PCBs at the time of its removal. The evidence showed that, after removing the tank, KBA filled the hole with the soil that had covered the tank and additional replacement fill. Other than rank conjecture, there was no evidence showing that the

4

replacement fill was PCB-contaminated.

The evidence also established that, in 1990, KBA hired an environmental firm and electrical contractor to remove five PCB transformers that had been part of the building's electrical system.   Trial evidence, including testimony from expert witness William Welbes and Jim Kelly, the former MPCA project manager for the site, established that these activities had little or no impact on the site's PCB contamination.

From this evidence, the Court concludes that KBA contributed little or none of the PCB pollution at the site.

D.   Discovery and Investigation of Contamination at the Site

In 1997, KBA entered into negotiations to resell the site to Hillcrest.   As part of Hillcrest's investigation preceding the proposed sale, it secured the services of an environmental consultant who found PCB contamination at the site.   KBA then undertook its own investigation and confirmed the presence of PCBs. KBA reported the contamination to the Minnesota Pollution Control Agency ("MPCA") and entered the MPCA's Voluntary Cleanup and Investigation Program.

Hillcrest has since withdrawn its offer to purchase the site. KBA has continued to investigate the site's PCB contamination under the guidance of the MPCA and the Minnesota Department of Health. KBA has established that PCBs contaminate the site's soil, groundwater, and the interior of the building, and has incurred

MPCA-approved costs of $106,393.23.

    E.   <u>The Site's Current Status</u>

    KBA's environmental consultant found that the site's soil is contaminated by PCB concentrations as high as 9,100 mg/kg. This compares to the MPCA's allowable soil limit of 1.2 mg/kg. The site's groundwater contains concentrations of PCBs as high as 37,000 $\mu$g/liter, compared to the MPCA's allowable groundwater limit of 0.04 $\mu$g/liter. Wipe samples have shown the site's building has PCB concentrations of up to 200 $\mu$g/cm$^2$, compared to the U.S. Environmental Protection Agency's limit (adopted by the Minnesota Department of Health) of 10 $\mu$g/cm$^2$.

    Expert witness William Welbes testified, without contradiction, that approximately 18,000 pounds of PCBs have been spilled on the site based on the amount of PCB contamination present. The PCBs continue to migrate in the soil and groundwater today due to the presence of transformer mineral oil constituents.

    Though not binding on the Court, the MPCA determined that KBA did not contribute to or otherwise associate itself with the contamination. On February 12, 1999, the MPCA issued KBA an assurance letter stating KBA is not a responsible person liable for cleanup of the contamination under MERLA. The MPCA also issued a letter to Viacom, as Westinghouse's successor, asserting that Viacom is a responsible person under MERLA, and requesting that Viacom conduct a response action at the site to remediate the PCB

contamination.

Because the site's soil and groundwater PCB concentrations exceeded the MPCA's acceptable limits, KBA was required to place a deed restriction on the property.   The restriction notifies potential purchasers of the contamination and restricts the owner's use and development options while the contamination remains.

Viacom has entered into an administrative consent order with the MPCA for the performance of the investigation and remediation of the site, and has assured the Court of its intent to fulfill this obligation.   It has failed to do so.

II.   Conclusions of Law

Based upon the foregoing Findings of Fact, the Court makes the following Conclusions of Law regarding the CERCLA, MERLA, and MERA claims.

A.   CERCLA

KBA and Viacom each claim the other is liable pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq.   The Court concludes that KBA has proven its CERCLA claim by the preponderance of the evidence, and that Viacom has failed to prove its CERCLA claim by the preponderance of the evidence.   Having reached this conclusion, there is no need to assess KBA's defense to Viacom's CERCLA claim, nor to allocate CERCLA liability between the parties.

Accordingly, the Court grants judgment in favor of KBA and

against Viacom.  The Court awards KBA response costs of $106,393.23 pursuant to 42 U.S.C. § 9607(a).  KBA is further entitled to prejudgment interest on these response costs, pursuant to 42 U.S.C. § 9607(a).  Finally, it is proper for the Court to declare Viacom liable for all future response costs pursuant to 42 U.S.C. § 9607(a).

   B.   <u>MERLA</u>

   KBA and Viacom each claim that the other is liable pursuant to the Minnesota Environmental Response and Liability Act, Minn. Stat. §§ 115B.01 <u>et seq</u>.  The Court concludes that KBA has proven its MERLA claim by the preponderance of the evidence and that Viacom has failed to prove its MERLA claim by the preponderance of the evidence.  Having reached this conclusion, the Court need not allocate MERLA liability between the parties.

   Accordingly, the Court grants judgment in favor of KBA and against Viacom.  The Court awards KBA response costs of $106,393.23 pursuant to Minn. Stat. § 115B.04, subd. 1.  KBA is further entitled to prejudgment interest on these response costs, pursuant to Minn. Stat. § 549.09, and its costs and attorneys' fees, pursuant to Minn. Stat. § 115B.14.  Finally, the Court declares Viacom liable for all future response costs, pursuant to Minn. Stat. § 115B.11, subd. 2(b).

   C.   <u>MERA</u>

   KBA claims that Viacom is liable pursuant to the Minnesota

Environmental Rights Act, Minn. Stat. §§ 116B.01 <u>et seq</u>.  The Court concludes that KBA has proven its MERA claim by the preponderance of the evidence.

Accordingly, the Court grants judgment in favor of KBA and against Viacom, and affirmatively enjoins Viacom to remediate the site's soil, groundwater, and building interior so that the previously-placed deed restriction may be removed, pursuant to Minn. Stat. § 116B.07.

## III. <u>Jury Findings</u>

The Court finds there was sufficient evidence adduced at trial to permit the jury's findings on plaintiff's common law claims, which are as follows:

### A.   <u>Nuisance</u>

On KBA's nuisance claim against Viacom, the jury found in favor of Viacom.

### B.   <u>Negligence</u>

On KBA's negligence claim against Viacom, the jury found in favor of Viacom.

### C.   <u>Strict Liability</u>

On KBA's strict liability claim against Viacom, the jury found in favor of KBA, and awarded $225,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

## IV. <u>Judgment</u>

Based on the preceding Findings of Fact, Conclusions of Law,

and Jury Findings, IT IS ORDERED that:

1.   Judgment is entered in favor of KBA and against Viacom in the amount of $106,393.23 in response costs, $225,000.00 in compensatory damages, and $5,000,000.00 in punitive damages.   KBA is also entitled to recover prejudgment interest on its response costs and compensatory damages, as well as costs and attorneys fees.  Finally, KBA is entitled to judgment declaring Viacom liable for all future response costs.

2.   Judgment is entered in favor of KBA and against Viacom for an injunction requiring Viacom to remediate the site, such that the deed restriction may be removed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 31st, 2002


JAMES M. ROSENBAUM
United States Chief District Judge

10

Featured Speakers Include:

**District of Minnesota**

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

**United States Bankruptcy Court**
**District of Minnesota**

Judge Robert J. Kressel

Application Pending for 7.5 CLE Credits Including
2 Ethics and 1 Bias Credit

**The Minnesota Chapter of the Federal Bar Association**

c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

In connection with
The Federal Judiciary

MINNESOTA CHAPTER OF
THE FEDERAL BAR
ASSOCIATION

**28th Annual
Federal Court
Practice Seminar**

June 19, 2002
8:00 am–5:15pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

**7:30-8:00**    Registration

**8:00-8:15**    Opening Remarks and Welcome, *Judge Ann D. Montgomery*

**8:15-9:00**    Securities Law Issues in the Wake of Enron, *Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*

**9:00-9:45**    Current Issues in Employment Law, *Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*

**9:45-10:00**    Morning Break

**10:00-10:45**    Current Initiatives in the U.S. Attorneys Office, *Tom Heffelfinger (U.S. Attorneys Office)*

**10:45-11:45**    Discovery Disputes: Professionalism in the Practice of Law?, *Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*

**11:45-12:45**    Lunch (Room 211)

## 11:45-12:45  Lunch (Room 211)

## Afternoon Session:

**12:45-1:30**    The Clerk's Office Can Be Your New Best Friend, *Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*

**1:30-2:15**    How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How, *Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi),*

**2:15-3:15**    Issues in the Wake of 9/11: Racial Profiling -- *Daniel M. Scott (U.S. Federal Public Defenders' Office,) Response by the Department of Justice -- Tony Brown (U.S. Attorneys Office)*
*Stephen J. Davidson (Leonard, Street and Deinard)*

**3:15-3:30**    Afternoon Break

**3:30-4:15**    Update on Technology Tools for Litigating in Federal Court, *Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*

**4:15-5:15**    Ethics in "Real Life" Practice Situations, *Martin A. Cole (Lawyers Professional Responsibility Office)*

## Seminar Registration

☐ Member      $195.00
☐ Non-Member    $225.00

Name _____

Firm/Employer _____

Address _____

_____

Phone _____

E-Mail _____

Complete registration form and send with check payable to:

Minnesota Chapter, FBA
c/o Nancy Gustafson
Kelly & Berens, P.A.
Suite 3720 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

## Not a Member? Join the FBA

To apply on-line or to download application form go to
http://www.fedbar.org and click on "Join the FBA."

Questions call: Barbara P. Berens, Vice President,
Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolling, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building