```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                   99-CV-1833(JMR/FLN)
```

Kennedy Building Associates    )
                               )
     v.                        )      ORDER
                               )
Viacom, Inc.                   )

In 2004, the Eighth Circuit Court of Appeals remanded this matter, directing this Court to modify its previous injunction concerning the clean-up of a polluted site. The Court stayed its hand to allow the Minnesota Pollution Control Agency ("MPCA") time to develop its own plan for the site. The MPCA has completed its work, and plaintiff now renews its motion to modify the injunction and to appoint a special master. Defendant opposes both requests. The Court heard oral argument on January 3, 2006. Plaintiff's motion is granted in part.

I.  Background

This case concerns the environmental cleanup of 2303 Kennedy Street, Minneapolis, Minnesota ("the site"), currently owned by plaintiff, Kennedy Building Associates ("KBA"). The site had previously been owned by a company which has now been acquired by defendant. The site and its environs are contaminated with a number of substances, chief among which are polychlorinated biphenyls, commonly known as PCBs. KBA initiated this action in 1999 seeking, among other things, an order directing defendant to conduct an environmental cleanup of the polluted site.

The matter was tried in 2002, and a jury found Viacom[1] liable for the contamination.  The history of this dispute is detailed at Kennedy Building Associates v. Viacom, Inc., 375 F.3d 731, 734-738 (8th Cir. 2004).

Subsequent to the trial, on May 31, 2002, this Court entered an injunction citing the Minnesota Environmental Rights Act ("MERA"), Minn. Stat. § 116B.07.  The injunction directed Viacom "to remediate the site's soil, groundwater and building interior so that the previously-placed deed restriction may be removed."  Id. at 737.  Viacom appealed this decision.

The Eighth Circuit Court of Appeals vacated the injunction, finding it "exceed[ed] the relief authorized" by MERA.  The appellate court further directed that the injunction be "redrawn to order only the relief authorized by MERA, that is, the prevention of ongoing releases of PCBs and chlorobenzenes into soil and groundwater."  Id. at 747-48.  Lastly, the Eighth Circuit directed that the injunction "more precise[ly] defin[e] . . . the acts required of Viacom."  Id. at 748.

Shortly after this ruling, KBA asked the Court to modify the injunction and appoint a special master to oversee remediation.

---

[1] On January 3, 2006, Viacom split into two entities -- Viacom and CBS.  At oral argument, Viacom's counsel anticipated that CBS would assume Viacom's liability for the contamination at the Kennedy Street property.  Until this representation is confirmed, references to "Viacom" in this opinion refers to Viacom as it existed before the split, and all successor corporations by whatever name.

2

The Court deferred ruling, pending the MPCA's administrative efforts to develop a site remediation plan pursuant to the more-expansive Minnesota Environmental Response and Liability Act ("MERLA"), Minn. Stat. §§ 115B.01-.20 (2002). After reviewing comments and submissions from KBA, defendant, and the public, the MPCA issued its final Decision Document ("MDD") on April 20, 2005.

KBA renewed its motion to modify and appoint a special master in November, 2005. The time has come to consider plaintiff's motion.

## II. Analysis

The MDD requires Viacom (1) to remove the site's asphalt parking area and excavate it, except for the footprint of the building, to a depth of 12 feet, and to backfill the area with clean soil; (2) for a period of five years, to monitor and test the site and surrounding areas for contaminants in the soil and groundwater; (3) in the event additional contaminated soil is exposed (for example, upon the building's demolition), to "remediate the exposed soil in accordance with an MPCA-approved RI [Remedial Investigation], FS [Focused Feasibility Study], and RD/RAP [Remedial Design/ Response Action Plan] process." (MDD section 5.2.5, attached as Ex. C to Affidavit of Michael R. Drysdale).

KBA apparently believed the MDD was insufficient and sought review by the Minnesota Court of Appeals. The appeal was dismissed

3

on procedural grounds without discussion of the merits.  See In re Kennedy Building Superfund Site Petition, No. A05-994 (Minn. Ct. App., Aug. 2, 2005) (unpublished) (Drysdale Aff. Ex. F).  Having been denied relief in state court, KBA asks this Court to order more extensive remediation, including excavation below 12 feet, remediation of the soil beneath the building, and remediation of the building's interior.  Plaintiff also seeks to require Viacom to post a bond to ensure that future remediation is timely completed.

The MPCA is empowered to enforce MERLA, a remedial statute broader than MERA, which underlies this Court's lawsuit.  MERLA allows for comprehensive cleanup of contaminated areas.  But this Court's injunctive power is cabined by MERA, both because this case was MERA-based, and because of the Eighth Circuit's instruction that MERA "can require remediation of past pollution to the extent past deposits pose a threat of continuing contamination of natural resources, including soil and water." Kennedy Building Associates, 375 F.3d at 747.  As a result, this Court's injunction must be directed solely to an order directing Viacom to clean up the site to the extent necessary to "prevent ongoing releases of PCBs and chlorobenzenes into soil and groundwater."  Id. at 748.  Accordingly, the Court considers whether KBA's requested relief will prevent migration of contaminants to uncontaminated areas.

1. The Soil

Trial evidence showed that PCBs bind strongly to soil, and do

4

not readily disperse in groundwater. PCBs in the soil most commonly migrate when the soil itself is disturbed. The MDD recognizes that, the deeper the soil, the less likely it is to be accessible to humans - and the less likely any PCBs in the soil will migrate. The MPCA has determined that excavation of exposed soil to a depth of 12 feet will reduce the volume of PCBs in the soil, and prevent the release of those PCBs into the environment.

Plaintiff asks the Court for an injunction directing defendants to excavate the soil below 12 feet, and for in-situ remediation of the soil beneath the footprint of the building. This request was considered and rejected by the MPCA, which concluded that any PCBs found in such "remotely accessible" soils did not present a threat to human health and welfare or to the environment. The MDD did provide, however, that in the event these soils are exposed and become accessible, Viacom was to excavate them to 12 feet below grade. No competent trial evidence showed any threat of the migration of soil contaminants more than 12 feet below grade. Accordingly, the Court declines to order additional excavation and remediation beyond that outlined in the MDD.

It is possible that a threat of contamination could arise in the future. To protect against this threat, the Court finds it reasonable to impose two conditions co-extensive with those imposed by the MDD. First, Viacom must test and monitor the property for five years, as provided in the MDD, to ensure contaminants are not

5

migrating. Viacom shall provide these test results to KBA and the Court within 30 days of receipt. If a test reveals contaminant migration, Viacom will be required to provide an acceptable plan to remediate the problem to the MPCA, KBA, and the Court in order prevent further contamination. Viacom shall provide this plan within 30 days of receipt of a test that reveals contaminant migration.

Second, if unremediated soils become exposed and accessible, including any exposure during building demolition or excavation of the site, KBA shall notify Viacom. To prevent the release of PCBs, Viacom shall provide an acceptable plan for remediation to the MPCA, KBA, and the Court within 30 days of KBA's notice.

2. <u>The Building Interior</u>

There is evidence showing the presence of PCBs within the building. The evidence shows these PCBs are bonded to the interior surfaces and do not pose an immediate threat of migration. While KBA expresses concern that fire might cause the PCBs to disperse, the record indicates the risk of dispersal is remote. There is no evidence showing that the building's contaminants are migrating into uncontaminated soils and groundwater, and no evidence showing they will do so unless the building is demolished. Accordingly, the Court sees no MERA basis under which it may enjoin Viacom to remediate the interior of the building.

3. <u>Bond</u>

Viacom has assured the Court, and apparently the MPCA, that it will remediate any exposed contaminated soil to a depth of 12 feet should the building be demolished and contaminated soils exposed at a later time. The MDD does not, however, set a timetable for this remediation, specifying only that Viacom "will be required to remediate the exposed soil in accordance with an MPCA-approved RI, FS, and RD/RAP process."

The Court is mindful that the administrative process leading to the MDD took over three years to complete. Trial evidence showed that Viacom acquired the site when it took over the site's prior corporate owner. And the Court has been advised that Viacom is, itself, being restructured. <u>See</u> footnote 1. Considering time-lags and ownership shifts, the Court finds it proper to direct that Viacom, in any of its incarnations, be required to post a bond or irrevocable letter of credit in an amount to be determined, to insure its future performance.

Accordingly, KBA's motion is granted in part and denied in part, and the injunction is modified as follows.

### Injunction

1. Viacom is Ordered to perform those actions prescribed in the MDD which will prevent the release of PCBs and chlorobenzenes into uncontaminated soil and groundwater consistent with the purposes of MERA.

2. Viacom is directed to provide KBA and the Court with copies of all results of tests required by the MDD within 30 days of receipt. If a test reveals contaminant migration, Viacom shall, within 30 days of receipt, provide to the MPCA, the Court, and KBA a plan to remediate the problem and prevent further contamination.

3. Future development of the site may require excavation below the MDD's 12-foot threshold. Such excavation may expose contaminated soil and present concomitant risk of release of PCBs and chlorobenzenes into the soil and groundwater. To protect against such release, Viacom is ordered to remediate any exposed contaminated soil and alleviate the risk of migration of these materials as set forth in the MDD. If unremediated soils become exposed and accessible, including any exposure during building demolition or excavation of the site, KBA shall notify Viacom. Within 30 days of KBA's notice, to prevent further release of contaminants, Viacom shall provide a plan for remediation to the MPCA, KBA, and the Court. To further ensure this relief occurs promptly, and to adequately fund this remediation, this Court directs Viacom and any corporate successor to post a bond or irrevocable letter of credit in an amount to be determined.

4. No later than February 21, 2006, Viacom shall advise KBA and the Court of the identity of the corporate successor that will assume liability for the site cleanup. This injunction shall, from time to time, be amended to reflect the correct name of Viacom's

corporate successor, and the address of that entity, along with current addresses to which notices of further proceedings may be directed.  This amendment shall be accomplished within ten (10) days of any change in ownership or responsibility for the site.

    5.  In the absence of any demonstrated need, KBA's request that this Court appoint a special master is presently denied.

    6.  Defendant's motion to strike the Second Welbe Affidavit is denied.

    7.  The parties are directed to propose a sum for the bond prescribed in this Order, and any data supporting that figure, on or before February 21, 2006.

    IT IS SO ORDERED.

Dated:  February _____, 2006

```
                              _____
                              JAMES M. ROSENBAUM
                              United States Chief District Judge
```