UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
99-CV-1833(JMR/FLN)

Kennedy Building Associates )
)
    v. ) ORDER
)
CBS Corporation )

The Eighth Circuit Court of Appeals has remanded this matter, directing the Court to clarify and/or reconsider Kennedy Building Associates' ("Kennedy's") claim for an award of $59,448.61 in additional response costs. See Kennedy Bldg. Assocs. v. CBS Corp., 576 F.3d 872, 881 (8th Cir. 2009) (Kennedy III).

I. Background

This case's peregrinations include three trips to the Eighth Circuit. See id.; see also Kennedy Bldg. Assocs. v. CBS Corp., 476 F.3d 530 (8th Cir. 2007) (Kennedy II) and Kennedy Bldg. Assocs. v. Viacom, Inc., 375 F.3d 731 (8th Cir. 2004) (Kennedy I). Its lengthy history can be found in those opinions.

In precis, Kennedy bought a site from CBS[1] Corporation's ("CBS") predecessor. That entity used the site as an electrical transformer repair facility, contaminating it with hazardous substances. Kennedy paid to investigate the contamination, leading it – more than 10 years ago – to file this action, seeking to hold CBS liable for the contamination and recover its costs under the

---

[1] The defendant's corporate history is complex. For the purposes of this Order, defendant is simply identified as "CBS."

federal Comprehensive Environmental Response and Liability Act ("CERCLA"), the Minnesota Environmental Response and Liability Act ("MERLA"), and the Minnesota Environmental Rights Act, as well as Minnesota common law claims. Only the MERLA claims are relevant here.

On January 22, 2002, the eve of trial, CBS and the Minnesota Pollution Control Agency (the "Agency") entered into a consent order, which led to a Decision Document. This document set forth a plan to clean up the site in accord with the Agency's wishes. After trial, the Court found CBS liable for Kennedy's past and future MERLA response costs. That decision was not challenged on appeal.

The Decision Document was issued in April 2005. CBS began implementing the plan in July 2006, completing it in May 2007. The Agency issued a letter, dated August 30, 2007, approving the work. Kennedy, however, was not satisfied with CBS's work. It asked this Court to find the work out of compliance with the Decision Document. Both this Court, and the Eighth Circuit, declined to do so. See Kennedy III, 576 F.3d at 876. On that appeal, the Eighth Circuit found "[t]here is substantial evidence in the record that CBS completed the remediation required by the Decision Document." Id. at 877.

Kennedy claimed a right to reimbursement for $59,448.61 in additional costs incurred between August 2006 and January 2007

2

while CBS conducted its cleanup. The Eighth Circuit, concerned that this Court had not fully considered the question, remanded it. The Court now makes explicit: these voluntarily incurred costs are not compensable under MERLA.

II. Analysis

The Court construes Kennedy's motion to recover additional response costs as a motion for leave to supplement the pleadings. See Fed. R. Civ. P. 15; <u>United States ex rel. Kinney v. Stoltz</u>, 327 F.3d 671, 673 (8th Cir. 2003). The Court, in its discretion, grants Kennedy this leave.

Whether these claimed additional response costs are compensable is a separate question. A party which prevails in a MERLA action may recover "all future reasonable and necessary costs incurred by that party to respond to the release or threatened release [of hazardous substances]." Minn. Stat. § 115B.11, subd. 2(b)(2008). "Response costs are the costs of actions implemented to abate or remedy a release or threatened release of hazardous substances in order to protect the public health and environment." <u>State ex rel. Hatch v. Employers Ins. of Wausau</u>, 644 N.W.2d 820, 824 n. 1 (Minn. Ct. App. 2002), <u>citing</u> Minn. Stat. § 115B.02 subds. 15-18.

The $59,448.61 Kennedy seeks is itemized in Kurt Williamson's affidavit. [Docket No. 379.] Included are: (1) $7,250 for December 2006 soil testing (Williamson Aff. ¶¶ 16, 17(a) and Ex.

3

A), with an additional $6,870 billed by William Welbes, Kennedy's environmental contractor, who advised Kennedy on the safety and advisability of retaining concrete buttresses built to stabilize the building during remediation, and who assisted Kennedy "in advising its tenants on the effects the remediation would have on their businesses," (Id. ¶¶ 17 (b), (c) and Exs. A, B); (2) engineer's charges of $940, for further advice concerning the buttresses; (3) $10,674.61 to Kennedy's off-site building management company for employees' time and mileage costs incurred in periodically driving to the building and for attending on Mr. Welbes and other environmental contractors when there, and who made photocopies and communicated with tenants about the remediation (Id. at ¶ 19 and Ex. D); and finally, (4) $33,714 paid to Mr. Williamson, Kennedy's employee who managed the subject building (reflecting 127 hours at $250/hour, and $500 for "photos, copies and related expenses," plus an additional $264 for 25 trips to and from the building. (Id. ¶ 20 and Ex. E.)

"Reasonable and necessary" costs are those needed "to minimize the damage to the public health and welfare of the environment." See Musicland Group, Inc. v. Ceridian Corp., 508 N.W.2d 524, 533 (Minn. Ct. App. 1994). In the Court's view, where a site is the subject of a Decision Document, "reasonable and necessary" costs are those incurred to implement the remedy set forth in the Decision Document. They do not include an unhappy landowner's

4

unilateral effort to "supervise" the cleanup beyond what is required by the Court and the Agency.

Here, the Agency's Decision Document defined actions required to remediate the Kennedy Building site. The record shows that CBS, not Kennedy, performed all testing, remediation, and other efforts to notify and protect the public required by the Decision Document. To quote the Eighth Circuit, "substantial evidence in the record" supports the conclusion that "CBS completed the remediation required by the Decision Document." Kennedy III, 576 F.3d at 877. CBS did all that was required; Kennedy's carping was not part of the plan.

In December 2006, five months after CBS began the Agency-approved plan, Kennedy -- marching to its own not-entirely-disinterested drummer -- undertook soil testing and analysis on the north side of the building.[2] The Agency did not request, much less require, Kennedy to perform this. The Court finds that as the state-approved remediation plan was already well underway, Kennedy took off on this Quixotic quest at its own hazard. The testing came back with nothing. There was no additional release or substance migration, and no need for further response. The Agency did not amend the Decision Document or require further cleanup. This was not a MERLA-necessitated cost, it was a frolic and detour

---

[2] CBS actually collected the soil samples at Kennedy's request, but refused to analyze them. (Williamson Aff. ¶ 16.)

for which there was no justification.  And it will not be reimbursed.

Kennedy kept going.  It hated, and still hates, the concrete buttresses.  When CBS excavated contaminated soil, these buttresses were needed to shore up the building.  CBS installed them, posing no threat to the public health, welfare, or the environment (indeed, as they were needed to provide structural stability, their removal might have posed a safety hazard).  Kennedy may dislike them (and it certainly does), but neither the Agency nor the environment requires their removal.

The Agency permitted CBS to leave the buttresses after remediation.  They remain today with the Agency's blessing.  Kennedy -- again on its own initiative -- paid consultants to see if the buttresses could be safely removed.  This was Kennedy's choice, but it was not a MERLA environmental cost.

Finally, Kennedy seeks reimbursement for its employees' time and travel incurred granting access to the building and communicating with its tenants. Whether such costs are "necessary" depends upon the facts.  For example, when a town holds public meetings to communicate with citizens about a tainted water supply, or when a property owner spends time "actually admitting government officials and contractors" to a site during remediation, courts have found such costs may be recoverable under

CERCLA.[3] See Village of Milford v. K-H Holding Corp., 390 F.3d 926, 933-34 (6th Cir. 2004); Syms v. Olin Corp., 408 F.3d 95, 106 (2d Cir. 2005). Such costs are arguably "caused" by the "release of hazardous substances." General Elec. Co. v. Litton Indus. Automation Sys., Inc., 920 F.2d 1415, 1417 (8th Cir. 1990), overruled in part on other grounds by Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994) (interpreting CERCLA).

This does not make one remediating a property liable for management's costs associated with running a building and protecting its own litigation interests. At least in the CERCLA context, such expenses do not "significantly benefit[] the entire cleanup effort," and are not recoverable. See Key Tronic, 511 U.S. at 820; see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 294 (3d Cir. 2000). Where the property owner has not "played any role in the containment and cleanup" of the property, but has merely "monitored, for [its] own benefit," the progress of the responsible party actually conducting the cleanup, the associated costs are not recoverable. Black Horse Lane Assoc., 228 F.3d at 297. Applying these principles, the Court finds Kennedy's claims for compensation of the time and efforts of its building managers are not recoverable.

---

[3] Because the Minnesota courts have yet to construe MERLA's "reasonable and necessary" language in the context of administrative and managerial services, the Court turns to corresponding language in CERCLA and cases construing it.

The Williamson affidavit claims three Kennedy employees from its off-site management company gave CBS access to the building, but not a single entry on any of their timesheets supports the claim. (See Williamson Aff. ¶ 19 and Ex. D.) Timesheets submitted by Peter Barott and Kalen Graham, for example, reflect inspection, document copying, review of construction plans, observing the number of workers present and the work being done, meetings regarding construction hazards, problems, and scheduling. George Mallory's entries reflect two hours spent on "boiler tube issue." A review of the Agency Decision Document does not show these were required.

Kennedy claims as "a responsible landlord," it instructed its management company "to meet with tenants on numerous occasions to explain the process, provide information concerning alternative parking, and resolve their concerns that were raised by the remediation," see Williamson Aff. ¶ 19. It may be such a company, but the Decision Document did not explicitly require this commendable practice, nor was it required to protect the public health and welfare of the environment. There is certainly no record evidence from which the Court could find Mr. Williamson's own time – spent to "Read emails, Review plans, Respond to emails, Review work at site, Discussion of findings, Buttress systems, Contamination, View excavation, sidewalls, back-fill, compaction, etc." (Williamson Aff. ¶ 20 and Ex. E) – could be defined as MERLA

costs.

III. Conclusion

Kennedy's late efforts to manage the site and educate its tenants may be laudable, but they are not required by MERLA. Its motion for additional response costs is denied.

IT IS SO ORDERED.

Dated: August 2, 2010

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge
